## N. O. Browning and Katie Browning v. Marshall, et al.

(Decided May 31, 1921.)

### Appeal from Pendleton Circuit Court.

1.   Boundaries—Evidence.—Evidence examined and held the trial court fixed the proper line between the two farms in question.

2.   Adverse Possession—Boundaries.—Where a temporary fence is established by agreement between adjoining land holders at a place known by them not to be on the line, and with the understanding that it should be thereafter placed on the true line, the holding by one of a strip of land belonging to the other, and enclosed by him under the agreement, is not adverse to the true owner.   And a conveyance by the owner is not champertous, the possession under the agreement being friendly to and not adverse to the title holder.

3.   Adverse Possession—Occupancy.—The occupancy of one holding the same under such an agreement was the possession of the title holder.

JOHN B. COLVIN and LESLIE T. APPLEGATE for appellants.

A. H. BAKER and M. C. SWINFORD for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Prior to November, 1913, W. R. Marshall was the owner of a tract of 119¼ acres of land on Licking river in Pendleton county.   Adjoining his farm on the north-west appellants, Browning and wife, owned a tract of land.

In November, 1913, Marshall conveyed his tract of land to Dennie Washburn.   For some years prior to that time the dividing fence between the Marshall and Browning farms had been very poor and, in fact, at places there were gaps or openings in it, and it afforded no protection

to either from the stock of the other. But it is claimed by appellees that, a year or two before the conveyance to Washburn, Marshall and Browning had entered into an agreement by which Browning might erect a temporary fence at a place known by them not to be on the true line, so that Browning might get the benefit of his pasturage and turn his stock out on his side; and this agreement, as alleged, involved a temporary enclosure by Browning of a small strip of Marshall's farm, approximately an acre or an acre and a half, and it was agreed that later, when a permanent fence should be made, it was to be put upon the true line.

At the time of the conveyance by Marshall to Washburn it was pointed out to the latter that the temporary fence was not on the correct line, and Marshall informed Washburn of the agreement between him and Browning.

Thereafter Washburn demanded of Marshall that he put him in possession of this strip of land which he had conveyed him by warranty deed, whereupon Marshall demanded of Browning that he place the fence upon the true line, which Browning at the time, according to the plaintiff's contention, agreed to do.

The matter thus ran on until 1918, when W. R. Marshall died, and thereafter his heirs or devisees, joint appellees herein with Washburn, made a similar demand upon Browning and at that time it was agreed between them and Browning that a survey of the line between the two farms should be made and that he would abide by the result of that survey and move the fence if the survey showed that as then constructed it was not on the true line.

This is an equitable action by the children of W. R. Marshall, and Washburn, praying that the latter be adjudged the owner of the strip of land in controversy, and that his title thereto be quieted, and that the defendants be required to put the fence on the true line.

The answer was a traverse of the allegations of the plaintiffs' pleadings, and in a separate paragraph it was pleaded that at the time of the conveyance from W. R. Marshall to Washburn the defendants were in the actual, open, adverse possession of the strip of land in controversy and had the same enclosed, and that therefore the deed from Marshall to Washburn, in so far as it embraced this strip of land, was champertous and void.

The plaintiffs by reply denied the adverse holding of the Brownings, and alleged, in substance, that their hold-

ing was under the agreement before mentioned, and was therefore not adverse to but friendly to the title of W. R. Marshall and was in law and in fact the possession of W. R. Marshall.

The circuit court adjudged Washburn to be the owner of the strip of land in controversy, and ordered that defendants place the fence upon the true line, and from that judgment they have appealed.

Without going into details it may be safely said that the survey made by the surveyors in accordance with the agreement made after the death of W. R. Marshall convincingly shows that the true line is that claimed by the plaintiffs. The beginning point of that line is fixed at a point on Licking river twelve links above a sycamore tree and running thence N. 50—30, E. 189 poles to a walnut tree or stump in or near a turnpike. The sycamore tree is definitely located at twelve links down the river from the beginning point, and the walnut stump definitely located at the other end of that line; not only so, the plat of the survey shows that the line runs approximately through the center of a walnut line tree called for.

The remaining question is, whether the holding of Browning of this narrow strip, enclosed by him prior to November, 1913, when Marshall conveyed to Washburn, was an adverse holding or whether at that time he was holding under the agreement with W. R. Marshall and therefore not adversely but friendly to Marshall's title?

On this issue the appellee, Ira Marshall, a son of W. R. Marshall, deceased, stated that Browning had said that he had moved the fence temporarily so that he could pasture his stock, and that he would move it back, and that it was about 1911 when Browning put the temporary fence there.

The Brownings denied that they ever made this agreement with W. R. Marshall, but N. O. Browning admits, in substance, that after the death of W. R. Marshall he did enter into an agreement to be bound by the report of the surveyors, but he says that he had subsequently declined to be bound by that agreement because Washburn had not carried out his agreement made at the same time.

The fact, that Browning made the agreement with W. R. Marshall's heirs after his death to be bound by the line fixed by the surveyors, is deemed strongly corroborative of the statement of Ira Marshall that there was such an agreement between Browning and his father during the latter's lifetime; for if there had been none, it

is not probable that Browning, holding the advantage he did after the death of W. R. Marshall, would have entered into a new agreement. At any rate, the finding of the chancellor below was necessarily that the holding of Browning was friendly to the title of W. R. Marshall, or the judgment could not have been entered, for if Browning's holding was adverse to W. R. Marshall, it must be that the deed to Washburn would have been void to the extent of the strip in controversy.

That finding of fact by the chancellor is approved; and the judgment is affirmed.